A96A0929. CUNNINGHAM v. THE STATE.
(475 SE2d 924)

ANDREWS, Judge.

Clarence Cunningham was convicted of theft by bringing stolen property into Georgia (OCGA § 16-8-9); DUI, being less safe to drive due to intoxication; flight to avoid a police officer after being given "visual and audible signals";[1] and obstruction of an officer based on his running away from the scene. He appeals from the denial of his motion for new trial, contending the evidence was insufficient and

---

[1] The trial court granted Cunningham's motion for new trial as to this count, and the issue of sufficiency of the evidence on this count is not addressed.

that his trial counsel was ineffective. We affirm.

1. Viewed with all inferences in favor of the jury's verdict, *Daras v. State*, 201 Ga. App. 512 (1) (411 SE2d 367) (1991), the evidence was that Taylor, a resident of South Pittsburg, Tennessee, reported his 1971 Ford pickup stolen around 9:30 p.m. on November 13, 1994. He had stopped on Highway 41 between Jasper, Tennessee and South Pittsburg at Kimball's Barbecue, parking his truck in the lot, around 7:30 p.m. He apparently left the pickup keys on the counter when he paid for his food and beverage. He gave no one permission to take the truck.

Around midnight, Whitfield County Deputy Sheriff Farrar received a lookout for a Ford pickup which had been involved in a domestic dispute at a Waffle House near I-75, where Cunningham's estranged wife and niece worked. The pickup was reported headed north on I-75. Shortly thereafter, Farrar was advised the pickup had returned and the domestic dispute continued. Farrar arrived at the Waffle House between 1:30 and 1:45 a.m. and found Cunningham there. Cunningham was "very nervous, [and] appeared to be intoxicated." Farrar stayed and observed Cunningham for a while, but felt he had observed nothing for which he could arrest him. While observing, he noticed Cunningham was wearing a hat. Farrar returned to his cruiser and saw a Ford pickup in the parking lot. He watched Cunningham from his cruiser for about 20 minutes and then was notified that Cunningham would not leave until the police did. Farrar moved his cruiser out of sight and saw the Ford pickup leave and head toward I-75, followed by Trooper Fowler, who was participating in the surveillance.

Trooper Fowler followed the pickup onto I-75, followed by Farrar and other local officers. He observed the pickup weaving and turned on his blue lights to effect a traffic stop. The truck pulled into the emergency lane, struck the guardrail several times, and went down an embankment.

The driver got out, looked at Trooper Fowler, and then ran through a barbed wire fence into a wooded area. The driver was wearing jeans, a white shirt with a design on the back, and a hat. Trooper Fowler and Deputy Sanders pursued, but were unable to catch the driver. State's Exhibit 3, a hat, was found near the barbed wire fence and identified by Farrar as the hat he saw Cunningham wearing. A jacket, State's Exhibit 5, was found on the seat of the pickup, along with a Tennessee license plate different from the Tennessee tag on the truck. At trial, Cunningham acknowledged that the jacket was his. At this time, the Georgia officers were not aware the truck had been stolen.

While the officers were searching for the driver, they received information that Cunningham had gone to a trailer park. Farrar,

Fowler, and three other officers proceeded to the trailer less than two hours after the wreck. The officers opened the trailer door and entered, finding Cunningham passed out on a bed. The officers detected the odor of alcohol, Cunningham's speech was slurred, he was unsteady on his feet, and his eyes were glassy. He refused to take a blood test. He was scratched up and a pair of leather shoes, wet and covered with grass seed, were found in front of a heater. Cunningham was wearing different clothing than when last seen.

Cunningham testified and acknowledged that he lived near Jasper, Tennessee. While he denied driving or being in the Ford, he admitted that he was intoxicated that evening, having consumed three or four six-packs during the day. He said he had been with Lawson, who dropped him off at the Waffle House. Because they were still married, he could eat free there and he was going to "sober up." He stayed at the Waffle House several hours because he and his wife had an argument and some man had grabbed her.

Cunningham said his wife and niece arranged for Homer, last name unknown, to take him home. Homer was a regular customer who sometimes took him home. Cunningham said he did not change his clothing that evening and denied stealing the pickup. He admitted that the hat and coat found near and in the truck were his, but said he had left them on a stool at the Waffle House and whoever was driving the truck took them. Cunningham did not know the current whereabouts of either his then ex-wife or niece, and the officers had been unable to locate them.

(a) The issue of which version of these events to believe was for the jury, which resolved the credibility issues in favor of the State. OCGA § 24-9-80. This Court will not weigh the evidence or determine witness credibility, but only determines the sufficiency of the evidence. *Daras*, supra.

(b) OCGA § 16-8-9 prohibits a person from bringing into this state "any property which he knows or should know has been stolen in another state." Such guilty knowledge can be established by direct or circumstantial evidence and can be inferred from circumstances which would, in the opinion of the jury, lead a reasonable person to believe that the vehicle was stolen. Id. at 513 (1) (c). Here, the pickup truck was reported stolen from a locale near Cunningham's home around 9:30 p.m., and was next seen after midnight in Cunningham's possession, with an extra license tag on the seat. When police attempted to stop him, he ran, a circumstance which the jury could consider evidence of guilt. *Lamar v. State*, 216 Ga. App. 513, 514 (2) (455 SE2d 316) (1995); *State v. Grimes*, 195 Ga. App. 773, 774 (1) (395 SE2d 42) (1990).

Review of the transcript reveals sufficient evidence from which any rational trier of fact could have found Cunningham guilty of this

offense beyond a reasonable doubt. *Hurston v. State*, 202 Ga. App. 311 (1) (414 SE2d 303) (1991); *Daras*, supra at 514 (2).

(c) Further review reveals evidence that, when first seen at the Waffle House, Cunningham appeared to an experienced officer to be under the influence of alcohol, and, when found two hours later, he was passed out. Upon being awakened, he exhibited slurred speech, glassy eyes, and had the odor of alcohol about him. In the opinion of the trooper who identified Cunningham as the driver of the pickup and saw it weaving on I-75,[2] in addition to observing him upon his arrest, Cunningham was less safe to drive due to his intoxicated condition.

The evidence was sufficient to convince any rational trier of fact of his guilt of this crime beyond a reasonable doubt. *Martin v. State*, 216 Ga. App. 25 (453 SE2d 498) (1995); *Lewis*, supra at 832 (1).

(d) Regarding his conviction of OCGA § 16-10-24 (a), the evidence showed that Cunningham bolted and ran after running off the road, having seen marked police cars, one with blue lights activated, pursuing him and uniformed officers running at him. There was sufficient evidence for any rational trier of fact to find him guilty of this offense beyond a reasonable doubt. *Okongwu v. State*, 220 Ga. App. 59, 62 (3) (467 SE2d 368) (1996).

2. Cunningham's first enumeration is that his trial counsel was ineffective.[3] Cunningham was represented through arraignment by attorney Corbin, but became dissatisfied with him and attorney Ward took over the case after January 30, 1995. After trial, Cunningham was appointed new appellate counsel who filed an amended motion for new trial contending Ward was ineffective for not making a motion for directed verdict on Counts 1 and 3 and for failing to file pretrial motions.

"A trial court's finding that a defendant has been afforded effective assistance of counsel must be upheld unless that finding is clearly erroneous. [Cit.]" *Garrett v. State*, 196 Ga. App. 872, 874 (1) (397 SE2d 205) (1990); see also *Hayes v. State*, 211 Ga. App. 801, 802 (1) (440 SE2d 539) (1994). A conviction will not be reversed on the basis of ineffective assistance of counsel unless "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." (Punctuation omitted.) *Carter v. State*, 176 Ga. App. 632, 633 (337 SE2d 413) (1985), quoting from *Strickland v. Washington*, 466 U. S. 668,

---

[2] We note that proof of such an unsafe act is not necessary for conviction under OCGA § 40-6-391 (a) (1). *Lewis v. State*, 214 Ga. App. 830, 831 (1) (449 SE2d 535) (1994).

[3] We construe this as being a complaint that the trial court erred in denying Cunningham's motion for new trial on this ground, considering the procedural posture of this case. OCGA § 5-6-48 (f).

669 (104 SC 2052, 80 LE2d 674) (1984).

(a) The assertion that counsel's failure to make a motion for directed verdict as to Count 1 was ineffective is without merit. Since we concluded in Division 1 that there was sufficient evidence to prove Cunningham's conviction, " 'a motion for directed verdict of acquittal would have been futile, and the failure to do so in no way constituted a deficient performance.' *Hayes*, supra at 803." *Tenant v. State*, 218 Ga. App. 620, 623 (4) (d) (462 SE2d 783) (1995).

(b) Even assuming, without deciding, that counsel should have made a motion for directed verdict as to Count 3 based on the fact the indictment charged "visual and audible" signals and the evidence showed only visual signals given, *Little v. State*, 202 Ga. App. 7, 8 (2) (413 SE2d 496) (1991), the trial court's grant of appellate counsel's motion for new trial on Count 3 makes this claim of ineffective assistance for failure to make that motion moot. *Johnson v. State*, 214 Ga. App. 77, 81 (2) (447 SE2d 74) (1994); *Moore v. State*, 212 Ga. App. 497 (1) (442 SE2d 311) (1994).

(c) Finally, Cunningham contends that trial counsel's failure to file a motion to suppress the evidence of his refusal to take a blood test and the wet shoes found in the trailer was ineffective.

As noted above, attorney Ward was appointed after arraignment, at or before which time motions are required to be filed. *Ellis v. State*, 216 Ga. App. 232, 233 (1) (453 SE2d 810) (1995); Uniform Superior Court Rule 31.1. While appellate counsel notes that a motion to file thereafter may be made, granting or denying such a request is within the discretion of the trial court. USCR 31.1. Denial of such a motion is not error. *Ellis v. State*, supra; *Thompson v. State*, 195 Ga. App. 18, 20 (2) (392 SE2d 732) (1990). Therefore, failure to make such a motion was not a deficient performance. *Tenant*, supra.[4]

Attorney Ward was given access to the State's file, and therefore, a discovery motion was not necessary and would have, as noted by the trial court, resulted in the State's being entitled to reciprocal discovery.

*Judgment affirmed. Pope, P. J., and Smith, J., concur.*

DECIDED SEPTEMBER 13, 1996.

*Michael R. McCarthy*, for appellant.
*Kermit N. McManus, District Attorney, John S. Helton, Assistant*

---

[4] While not necessary for our decision, we note that the trial court's conclusion that the entry into the trailer was made in "hot pursuit" was not clearly erroneous. *Brock v. State*, 196 Ga. App. 605 (396 SE2d 785) (1990); see generally *Carranza v. State*, 266 Ga. 263 (467 SE2d 315) (1996).