A97A0981. MENCY v. THE STATE.
(492 SE2d 692)

RUFFIN, Judge.

A DeKalb County grand jury returned an indictment charging Kelvin Mency with three counts of aggravated child molestation, eight counts of child molestation, one count of statutory rape, and one count of criminal attempt to commit child molestation. A jury returned guilty verdicts on seven counts of the indictment. The trial court declared a mistrial on an additional five counts because the jury deadlocked on those counts after two days of deliberation. In

addition, the trial court directed a verdict on one count of the indictment. Mency's appellate counsel filed a motion for new trial and an amended motion for new trial. The trial court held an evidentiary hearing on the motion and thereafter filed an order denying it. For reasons which follow, we affirm.

Viewed in a light most favorable to support the jury's verdict, the evidence shows that Mency worked as a health and physical education teacher at Knollwood Elementary School from 1991 through the 1993-1994 academic year. The victims in this case were students in his physical education classes.

Victim S. H. testified to several incidents of alleged molestation. One incident occurred in a hallway in front of the school library. Mency kissed her and removed some chewing gum from her mouth as they kissed. On another occasion, Mency asked S. H. to go into a shed on the elementary school property and again kissed her. S. H. also testified that Mency had anal intercourse with her in the teachers' bathroom. On two additional occasions, Mency had anal intercourse with S. H. in an equipment room of the elementary school. S. H. further described incidents at the elementary school in which Mency kissed her breasts and caused S. H. to put her hands and mouth on his penis.

Victim S. O. testified that one evening she accompanied her mother to a PTA meeting at the elementary school. S. O. went to a classroom at Mency's request where they kissed. On a second occasion, Mency asked S. O. to go into an equipment room at the elementary school where they kissed and Mency ejaculated in front of S. O. During a third incident in the teachers' bathroom, Mency touched S. O. on her breasts and buttocks and inserted his finger into her vagina.

Victim L. C. testified that Mency took her outside the elementary school building and put his hand under her skirt. Mency then moved L. C.'s tennis briefs to the side and touched her leg until she forced his hand away. Mency attempted to move his hand further up L. C.'s leg, but withdrew it when two other students came outside. L. C. stated that on another day, as she walked in front of Mency, she turned to ask him a question, and he reached for her buttocks.

1. In his first enumeration of error, Mency challenges two pre-evidentiary instructions given to the jury by the trial court. In the pre-evidentiary instructions, the trial court told the jury that evidence consisted of the sworn testimony of persons subpoenaed by the State and exhibits admitted into evidence. At the conclusion of evidence, the trial court properly charged the jury on the meaning of evidence. Mency argues on appeal that the trial court's description of evidence either "implied, or directly stated that the jurors could only consider evidence from witnesses called by the State."

Because Mency did not preserve this enumeration for appellate review, we do not reach the issue of whether on this record the trial court corrected the pre-evidentiary instructions by giving correct principles of law in the main charge. See *Malone v. State*, 219 Ga. App. 728, 730 (2) (466 SE2d 645) (1995); *Duggan v. State*, 225 Ga. App. 291, 294 (2) (483 SE2d 373) (1997). Mency objected neither as the trial court gave the two pre-evidentiary instructions, nor when the trial court concluded giving the pre-evidentiary instructions. At the conclusion of evidence, the judge read the main charges to the jury. Mency's trial counsel reserved all of his objections to the main charges until the time of his motion for new trial or appeal.

"A pre-evidentiary statement is not the equivalent of a jury charge. Reservation of objections to the main charge does not encompass objections to the pre-evidentiary statement." (Citations and punctuation omitted.) *Malone*, supra at 729. To preserve review of any error in the trial court's pre-evidentiary instructions, Mency should have objected contemporaneously to the pre-evidentiary instructions. See id. He did not do this; therefore, this Court has nothing to review on appeal.

2. In his second enumeration of error, Mency argues through new appellate counsel that the trial court erred in denying his motion for new trial because he was denied the effective assistance of trial counsel.

"To establish a claim of ineffective assistance of counsel, [Mency] must show both that his trial counsel's performance was deficient and that counsel's deficiency so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). [Mency] must establish both the performance and the prejudice components of the *Strickland* test." *Johnson v. State*, 222 Ga. App. 722, 728 (9) (475 SE2d 918) (1996).

To succeed in his claim, Mency "must overcome the strong presumption that counsel's conduct falls within the broad range of reasonable professional conduct." (Citation and punctuation omitted.) *White v. State*, 193 Ga. App. 428, 430 (2) (387 SE2d 921) (1989). We will not reverse on the basis of ineffective assistance of counsel unless trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial could not reliably have produced a just result. *Cunningham v. State*, 222 Ga. App. 740, 743 (2) (475 SE2d 924) (1996). Mency must show that the trial court clearly erred and that such error was harmful in deciding whether his trial counsel was ineffective. Absent clear error and harm, we will affirm the trial court's finding that Mency did not receive ineffective assistance of counsel. See id.

(a) Mency argues that his trial counsel was ineffective because he failed to object to the court's pre-evidentiary instructions regarding evidence. Mency's trial counsel testified at the hearing on the motion for new trial that he was reviewing the jury list and preparing his opening statement during the trial court's pre-evidentiary instructions. He did not recall what the trial court said, but had he listened attentively, he would have objected to the trial court's pre-evidentiary instructions as given. Mency's appellate counsel argues that the silence of Mency's trial counsel was not a tactical decision, and that trial counsel was attending to other matters rather than listening to the pre-evidentiary charge.

Based on the record, the trial court did not err in finding that Mency received effective assistance of counsel. For purposes of this analysis, we will assume, as Mency's appellate counsel asserts, that Mency's trial counsel should have objected to the pre-evidentiary instructions. Therefore, we must determine if the trial court was clearly erroneous in deciding that the conduct of Mency's trial counsel in failing to object was not so deficient as to prejudice his trial. See *Strickland*, supra; *Cunningham*, supra.

Under the *Strickland* standard, error does not equal deficiency. Thus, "[i]n determining the effectiveness of counsel, the court looks to the totality of the representation provided by counsel. A defendant's right to effective assistance of counsel does not guarantee errorless counsel or counsel judged ineffective by hindsight, but counsel likely to render and rendering reasonably effective assistance." (Citation and punctuation omitted.) *Watkins v. State*, 206 Ga. App. 575, 576 (2) (426 SE2d 26) (1992). "The test for reasonable attorney performance has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether [a] reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial[.] . . . [W]e are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately." (Citation and punctuation omitted.) *Jefferson v. Zant*, 263 Ga. 316, 318 (3) (a) (431 SE2d 110) (1993). Moreover, the burden of proof is on the defendant to establish that the trial court's finding was clearly erroneous as to his claims of ineffective assistance of counsel. *Reddin v. State*, 223 Ga. App. 148, 152 (3) (g) (476 SE2d 882) (1996).

Under the circumstances presented in this case, we do not find that the trial court was clearly erroneous in finding trial counsel rendered effective assistance. Rather, the evidence shows that Mency's trial counsel did not act differently than a "reasonable lawyer at trial could have acted." See *Jefferson*, supra. Trial lawyers, unfortunately, are often faced with the predicament of simultaneously performing

two or more tasks during a trial. In this case, Mency's trial counsel was reviewing his jury list and opening statement while the trial court gave preliminary instructions. Although "perfect" counsel might have been able to devote full attention to both matters simultaneously, the record shows that Mency's trial counsel was working diligently on his client's behalf during the pre-evidentiary instructions. The fact that Mency's trial counsel, on hindsight, would have conducted himself differently during these particular pre-evidentiary charges does not mean his trial counsel was deficient. The law requires only that the adversarial process work adequately in Mency's case based on the totality of the representation, not that Mency have perfect counsel. See *Jefferson*, supra; *Watkins*, supra.

Mency's trial counsel selected jurors, made an opening statement, made appropriate objections, conducted cross-examinations of the State's witnesses, conducted a direct examination of Mency, presented several character witnesses — including a co-worker from Knollwood Elementary School, a minister, and the U. S. Federal Marshal for the Northern District of Georgia, made a closing argument, and reserved objections to the trial court's main jury charges. In other words, based on the totality of the representation, Mency had the benefit of competent, well-prepared, and aggressive trial counsel for his defense. Based on this record, Mency has not met his burden of proof that the trial court was clearly erroneous in deciding that trial counsel effectively assisted him. See *Cunningham*, supra. Therefore, we affirm the trial court with regard to this enumeration.

(b) Mency also argues that his trial counsel was ineffective because he failed to object when the trial court questioned one of the State's witnesses, K. W. The State asked questions of K. W., a ninth grade student, in an attempt to have her recall a conversation that she had with one of the victims in the case. Mency's counsel objected to K. W.'s responses on the grounds that the answers were speculative and non-probative. The trial court sustained the objections and then asked K. W. a series of questions regarding her recollection of her conversation with the victim. The court then allowed the State to proceed with its direct examination.

"A trial court has the right to develop fully the truth of a case, and may exercise this right by examining witnesses called by the parties. . . ." (Citation omitted.) *Ashley v. State*, 263 Ga. 820, 822 (3) (a) (439 SE2d 914) (1994). The trial judge in this case asked the witness a series of questions that elicited specific factual testimony, as opposed to speculation and opinion. Moreover, the trial court's questions did not express or intimate its opinion about what the State had proven in the case. See *Calloway v. State*, 199 Ga. App. 272, 274 (7) (404 SE2d 811) (1991). We therefore cannot say that the trial court abused its discretion in questioning a ninth grader regarding

her recollection of a conversation after sustaining the objections of Mency's trial counsel to K. W.'s answers. The failure of Mency's trial counsel to make meritless objections was not ineffective assistance.

(c) Mency next challenges his trial counsel's failure to object to K. W.'s "bolstering" of S. O.'s testimony. K. W. testified that when she first learned of S. O.'s sexual contact with Mency, she knew that S. O. was sincere and "wasn't telling no story."

Mency's trial counsel testified at the hearing on the motion for new trial that he did not object to this testimony, although he thought it was "borderline objectionable." He did not elaborate on his reasons for not doing so. We do not reach the issues of whether this was a correct decision, or whether counsel was deficient in this area. " '[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.' " *Lajara v. State*, 263 Ga. 438, 440 (3) (435 SE2d 600) (1993). Assuming, however, as appellate counsel suggests, that this failure to object was not part of trial strategy, Mency, nevertheless, fails to show by the record how K. W.'s alleged bolstering of S. O.'s testimony so prejudiced his defense as to affect the outcome of his trial.

The jury apparently disbelieved Mency's testimony with respect to all three victims, not just S. O. Based on the record, we cannot conclude that Mency's trial counsel was ineffective because he did not object when S. O.'s friend testified that she believed the victim. Because Mency did not meet the second prong of the *Strickland* test, we affirm the trial court on this enumeration of error. See, e.g., *Johnson v. State*, 260 Ga. 159 (391 SE2d 113) (1990).

(d) Mency further questions his trial counsel's failure to object to the State's witness Detective Reynold's "bolstering" of S. H.'s testimony. Mency specifically challenges Detective Reynold's testimony that he did not believe S. H.'s initial statement in which S. H. denied any sexual involvement with Mency.

At the hearing on the motion for new trial, Mency's appellate counsel specifically asked Mency's trial counsel if his failure to object to Detective Reynold's testimony was a tactical move. Mency's trial counsel responded that although he thought Detective Reynold's testimony was borderline objectionable, he "did not want to magnify the importance of that testimony." He further testified that S. H.'s testimony created some ambiguities with which he, as Mency's trial counsel, would have to contend.

"Trial strategy and tactics do not equate with ineffective assistance of counsel. . . . [T]he fact that [Mency] and his present counsel disagree with the decisions made by trial counsel does not require a finding that [Mency's] original representation was inadequate. (Cits.)" *White*, supra at 430. Mency's counsel did not object as part of

his trial strategy of not "magnifying the importance of that testimony." See *Williams v. State*, 214 Ga. App. 106 (446 SE2d 789) (1994). The failure of Mency's trial counsel to object to Detective Reynold's testimony, on this record, was not ineffective assistance of counsel.

Moreover, although Detective Reynold's phrasing was unartful, he could appropriately testify that S. H.'s statement was not consistent with what he had learned during the remainder of his investigation. Cf. *Satterwhite v. State*, 212 Ga. App. 543 (2) (442 SE2d 5) (1994). Mency's trial counsel therefore was not deficient in failing to object to this testimony. Accordingly, this enumeration also is without merit.

(e) Mency further argues that his trial counsel was ineffective because he elicited testimony from the school's principal, William Duncan, that he had discussed with Mency inappropriate contact with female students. In response to questioning by Mency's trial counsel, Duncan indicated that he had offered Mency "counsel or advice related to inappropriate contact with [female] students. . . ." Duncan also stated that when he counseled Mency he did not, at that particular time, counsel all of his male instructors. During deliberations, the jury sent a note to the judge asking if they could consider Duncan's testimony regarding his counseling to Mency about contact with students. The trial court instructed the jury that they could consider any testimony not stricken from the record.

At the hearing on the motion for new trial, Mency's trial counsel testified that the principal "spoke with [Mency] and all of the other male instructors at [Knollwood Elementary School], advising them of things they might do in order to shield themselves from these types of charges [of inappropriate conduct]. . . ." Mency's trial counsel further testified that his motivation for this line of questioning was to "sensitize the jury to the fact that [Mency] was particularly sensitive to placing himself in compromising situations because he was aware of what these things could lead to, and that the principal had, in fact, raised that with all the male instructors." According to trial counsel, "the attempt to introduce that testimony was a decision — a conscious decision."

Mency's trial counsel made a strategy choice — a conscious decision — to question Duncan about his counseling of Mency. Mency's trial counsel apparently made this decision based on his belief that Duncan had spoken with all the male teachers. "It is not the duty of courts to second-guess trial counsel's choice of strategy." *Hammond v. State*, 264 Ga. 879, 882 (3) (a) (452 SE2d 745) (1995). The fact that Mency and his appellate counsel may now disagree with trial counsel's choice does not affect the reasonableness of trial counsel's tactics. See id. Effectiveness is not judged by hindsight or by result.

*White v. State*, supra at 430. We thus find that the trial court did not err in denying Mency's motion on this ground.

(f) Mency next challenges his trial counsel's failure to offer into evidence defendant's Exhibit 1, a diagram of the school's layout. Mency's trial counsel testified at the hearing on the motion for new trial that he made an agreement with the State that he would not introduce the diagram into evidence if the State did not introduce a videotape of victim interviews into evidence. Mency's trial counsel testified "There was some trade-off there." During deliberations, the jury asked to see the diagram, but the judge refused because it was not introduced into evidence.

The testimony of Mency's trial counsel conclusively establishes that his decision not to offer the diagram into evidence was part of his trial strategy. As stated above, the fact that Mency and his appellate counsel disagree with the decisions, tactics, or strategies made by trial counsel does not demonstrate that Mency's trial counsel rendered ineffective assistance. See id. This enumeration therefore is also meritless.

(g) Mency also questions his trial counsel's stipulation that certain of the State's witnesses consistently testified in court with statements they made in earlier interviews, which were recorded on videotape. At the hearing on the motion for new trial, Mency's trial counsel acknowledged that he had originally intended to stipulate that neither the State nor Mency would play the videotape, but instead agreed to the broader stipulation read to the jury at trial.

We do not reach the issue of whether the performance of Mency's trial counsel was deficient in this respect. See *Lajara*, supra at 440. Mency does not show by the record how a stipulation about the consistency between the witnesses' videotaped interviews and the witnesses' in-court testimony prejudiced his defense. Because Mency did not meet the second prong of the *Strickland* test, we also affirm the trial court on this enumeration of error.

(h) Mency further argues that his trial counsel was ineffective because he failed to object to the trial court's order that Mency testify earlier than defense counsel anticipated. Mency's trial counsel wanted to call Mency to the stand after several character witnesses had testified. The trial proceeded more quickly than the parties anticipated, however, and Mency's character witnesses were unavailable until the following day. The trial court did not wish to recess at 3:30 p.m. Therefore, the trial court ordered Mency to testify first — if he chose to testify — to avoid delaying the trial.

The trial court has broad discretion in controlling the order of proof at trial. *Bruce v. State*, 263 Ga. 273, 274 (4) (430 SE2d 745) (1993). We will not disturb the trial court's ruling on such matters unless the record shows an abuse of that discretion. Cf. *Allain v.*

*State*, 202 Ga. App. 706, 708 (3) (415 SE2d 315) (1992). The record in Mency's case does not show that the trial court abused its discretion. Consequently, the failure of Mency's trial counsel to object to the trial court's order did not amount to ineffective assistance of counsel.

(i) Finally, Mency challenges his trial counsel's failure to object to the State's closing argument about the habits and propensities of child molesters as compared to other criminals. During her closing argument, the assistant district attorney told the jury that child molesters commit their crimes in private. Mency's trial counsel did not object because he thought the State's argument was a logical deduction from the evidence in the case. At the hearing on the motion for new trial, he stated: "I did not think an objection would be sustained as to that particular line of discussion, and I did not want it to appear that [the defense was] somehow mortally wounded by having that discussion go on." Mency's trial counsel therefore allowed the State to continue "rather than prolong [the State's closing argument] or magnify it. . . ." This is nothing more than trial strategy, and it does not equate with ineffective assistance of counsel. Counsel may argue the evidence and the reasonable·deductions therefrom. *Fugate v. State*, 263 Ga. 260, 265 (10) (431 SE2d 104) (1993). In this case, the evidence reflected that in each instance, Mency and the victims were alone, although at a public place. A reasonable inference from that evidence is that Mency, like most people, engaged in sexual acts in private regardless of whether such sexual acts are legal or illegal. Mency does not show by the record that a reasonable probability exists that the result of the trial would have been different if the State had not argued that child molesters commit their crimes in private. If Mency was not prejudiced by the argument, he certainly was not prejudiced by his trial counsel's failure to object to the argument. The trial court did not err in denying the defendant's motion for new trial on this ground.

3. In his third enumeration of error, Mency argues that the trial court erred in charging the jury that the uncorroborated testimony of the victims was sufficient to convict the defendant of child molestation and aggravated child molestation. We disagree.

The record shows that the trial court instructed the jury: "the uncorroborated testimony of the victim is sufficient to sustain a conviction of the charges of child molestation and aggravated child molestation as contained within this bill of indictment if that testimony is sufficient to convince you of the defendant's guilt beyond a reasonable doubt." Although Mency concedes that this is a correct statement of law, he argues that this legal principle is not appropriate as a jury charge, because if applicable to the facts, the charge demands a guilty verdict. According to Mency, "there is a reasonable likelihood that the jury applied a standard of proof less stringent

than that required by the state and federal due process clauses."

We approved a similar jury charge in *Harris v. State*, 189 Ga. App. 49 (2) (375 SE2d 122) (1988). In that case, the court charged that in a child molestation case the uncorroborated testimony of the victim is sufficient to sustain a conviction. Id. Mency correctly argues that a correct statement of law embodied in a reviewing court's opinion is not necessarily appropriate as a jury charge. *Sumlin v. State,* 207 Ga. App. 408, 409 (2) (427 SE2d 868) (1993). Nevertheless, on this record we hold that the charge, which was coupled with instructions regarding the burden of proof, was an appropriate statement of relevant law to give to the jury. Therefore we find no error.

*Judgment affirmed. Birdsong, P. J., and Eldridge, J., concur.*

DECIDED OCTOBER 1, 1997.

*Joseph J. Drolet,* for appellant.

*J. Tom Morgan, District Attorney, Robert M. Coker, Sheila A. Connors, Assistant District Attorneys,* for appellee.