560 S.E.2d 80 (2002)
253 Ga. App. 611
WASHINGTON
v.
The STATE.
No. A01A2331.
Court of Appeals of Georgia.
February 7, 2002.
*81 Diane M. McLeod, for appellant.
Spencer Lawton, Jr., Dist. Atty., Patricia P. Stone, Asst. Dist. Atty., for appellee.
SMITH, Presiding Judge.
Kevin Derrick Washington was convicted by a jury of possession of a controlled substance with intent to distribute and was sentenced as a recidivist. His motion for new trial was denied. Washington appeals, raising issues concerning sufficiency of the evidence, admission into evidence of similar transactions and the trial court's accompanying instructions, effectiveness of counsel, and other evidentiary matters. We find no reversible error with respect to these contentions, and we affirm.
When construed in favor of the verdict, the evidence presented at trial shows that while on patrol at approximately 4:30 a.m. on November 26, 1997, Officer Robert Gavin of the Savannah Police Department observed two vehicles parked on either side of the street. Neither car was running, and the cars' lights were not on. He observed a woman, later identified as Debra Smith, walking back and forth between them, and he saw her get into the rear of the car in which Washington was a front seat passenger. Smith stayed inside the vehicle "for a little bit of time" and then *82 exited it while carrying two bottles of beer, at least one of which was open. Gavin approached her in his car at that time. According to Gavin, he asked her "what was going on tonight," and she told him that she was getting a ride with her brother, the driver of the car in which Washington was a passenger. Gavin referred to this driver as "John Doe" because he was unable to determine his true identity. But both Washington and John Doe told Gavin that they were not related to Smith and that they "knew her from being around."
Backup law enforcement arrived, and another officer patted Smith down and discovered a knife and a rock of crack cocaine inside her sock, as well as two crack pipes on her person. Meanwhile, Gavin obtained John Doe's driver's license. He observed that John Doe did not fit the descriptive information or the photograph on the license. On questioning by Gavin, John Doe could not remember the information contained on the license. Officers "tried for several minutes" to learn his identity, and he gave them "several different names." He was arrested for giving false information and obstruction.
Before Gavin "went through the process with Mr. Doe, asking him who he was," he walked to the passenger side of the vehicle. Although he wanted Washington to roll down his window, Washington opened the door and began to step out. As Washington did so, Gavin looked down and checked "the whole area around the feet, around his hands." He saw nothing on the seat near Washington or along the door, the doorjamb, or along the well "where your feet would be." Gavin told him to stay inside the vehicle, and Washington complied.
Gavin then became involved with John Doe's arrest. After John Doe was placed in custody, Gavin returned to the passenger side of the vehicle. As he was walking toward the vehicle, he saw Washington "moving around inside the car," and Washington seemed to be "digging his hands" into his pockets. "He was doing a lot of moving inside the car when he was in there by himself." Gavin testified that he could see Washington's arms and elbows "moving out, his jacket moving, his hands going.... [H]is hands were moving inside of his jacket, because his jacket was also moving.... He was looking down. He was moving his hands around." He also stated that Washington's hands were "down in front of him." Gavin became "a little worried about what he was digging for or what he was looking for" and asked Washington to exit the car and place his hands on top.
As soon as Washington opened the door, Gavin saw a plastic baggie on the center of the doorjamb that was not there the first time he spoke with Washington, when Washington attempted to step out of the car. The baggie contained approximately ten rocks of a substance that appeared to be crack cocaine. Gavin testified that from his experience, the number of rocks seized showed that the substance, identified as cocaine at trial by a forensic chemist, was intended for distribution rather than personal use.
Smith was arrested and pled guilty to possession of a controlled substance and carrying a concealed weapon. She testified against Washington, stating that she purchased a "dime" or $10 rock of crack cocaine from him. Smith unequivocally identified Washington as the seller, stating that he was the person from whom she usually bought her drugs and that she usually located him in the area of the arrest. Washington denied possession of the cocaine, testifying that the driver of the car, whom he identified only as "Terry," was inside the car when Gavin first talked with Washington. According to Washington, as Gavin walked from the passenger side of the car toward the driver's side, "Terry" threw something, which hit his window and fell to the floor.
1. Washington argues that the circumstantial evidence in this case was not sufficient to convict him, contending that Gavin did not testify that he found any money on his person. But lack of evidence presented concerning money that may or may not have been discovered does not refute Smith's testimony that she purchased cocaine from Washington. This was direct evidence of Washington's guilt. See generally Moody v. State, 232 Ga.App. 499, 502(1), 502 S.E.2d 323 (1998) (direct evidence of defendant's guilt through co-defendant's testimony that *83 she saw defendant throw cocaine on floor). And this evidence was corroborated by Gavin's testimony concerning Washington's behavior and his discovery of the cocaine only inches away from Washington. Washington also states that he was not the owner of the vehicle in which the cocaine was found. Pointing out that the owner of a vehicle is presumed to have contraband inside the vehicle under his or her control, see Fears v. State, 169 Ga.App. 172, 173, 312 S.E.2d 174 (1983), and arguing that Smith and the driver had equal access to the contraband, Washington maintains that the State proved only his mere presence at the crime scene.
We first note that Washington's reliance on the equal access doctrine is misplaced. We cannot determine who owned the vehicle from the transcript; the record does not show whether the driver, Smith, or Washington owned the vehicle or had exclusive control over it. It follows that we cannot determine the party to whom the presumption discussed in Fears, supra, applies.
The equal access rule, entitling a defendant to acquittal where evidence is presented that others had equal access to a vehicle or that the vehicle had recently been used by others, applies only where the sole evidence of possession of contraband found in the vehicle is the defendant's ownership or possession of the vehicle. It is simply a defense available to the accused to whom a presumption of possession flows. Because ... the State did not show the indicia giving rise to the presumption, that is, ownership or exclusive control of the vehicle, no presumption arose and therefore there was no triggering of the equal access defense.

(Citations and punctuation omitted; emphasis supplied.) Jackson v. State, 216 Ga.App. 842, 844-845(2), 456 S.E.2d 229 (1995) (full concurrence as to Division 2).
But even if the equal access rule might be applicable in this case, under this doctrine "merely finding contraband in a car occupied by defendant is not sufficient to support a conviction if it affirmatively appears from the evidence that persons other than the defendant had equal opportunity to commit the crime." (Citations and punctuation omitted.) Fears, supra at 173(1), 312 S.E.2d 174. Conversely, if "additional evidence" exists of possession of contraband by the defendant, whether circumstantial or direct, other than mere use of or presence inside the vehicle, the jury must determine guilt or innocence. Id. at 174(1), 312 S.E.2d 174. Here, as in Fears, the testimony of Gavin and Smith established more than Washington's mere presence in the vicinity of the cocaine. The evidence amply supported the jury's verdict.
2. Washington contends that the trial court erroneously denied his motion for mistrial made after the State violated the court's ruling on a motion in limine excluding alleged statements made by John Doe. We conclude that Washington waived appellate review of the denial of his motion.
Before trial, the State indicated that it would not use this evidence in its case-in-chief but that it would seek its admission if Washington tried to place blame on John Doe. The trial court ruled this evidence inadmissible in the State's case-in-chief but stated that the issue would be revisited in the event it arose later in the trial. As discussed above, Washington denied possession of the cocaine and implied that it belonged to John Doe. The State then asked Washington whether it was true that John Doe had told the police that Washington had said he "needed to get rid of [his] s," and the trial court sustained the objection immediately made by Washington. Washington moved for a mistrial, which the trial court overruled. The court did, however, instruct the jury to disregard "what Mr. Doe is alleged to have said. It has no probative value, at all. He is not here, and the alleged statement, if any, has no value at all in your consideration of the case." Cross-examination proceeded, and Washington did not renew his motion for mistrial or request further curative action. It was incumbent on him to do so to preserve the denial of his motion for appellate review. See, e.g., Anderson v. State, 236 Ga.App. 679, 684-685(7), 513 S.E.2d 235 (1999).
3. Washington alleges error concerning the admission of three similar transactions *84 and the accompanying instructions given to the jury.
(a) Washington contends that the trial court did not appropriately limit the purpose for which the similar transactions should be considered, in violation of Stephan v. State, 205 Ga.App. 241, 422 S.E.2d 25 (1992). That case prohibits the mere "articulation" by the trial court of "a comprehensive list of possible purposes" for the use of similar transaction evidence, and it requires the trial court to instruct the jury to limit its consideration to the one purpose for which the evidence is admissible. Id. at 243-244(2), 422 S.E.2d 25. We find no violation of Stephan here. Before each similar transaction was admitted into evidence, the trial court extensively instructed the jury on the law concerning similar transactions, stating among other things that such evidence can be considered only for the sole purpose to which the evidence is limited. With respect to the first similar transaction admitted, the court then instructed the jury as follows:
The law provides that evidence of other transactions or offenses, or whatever they may be, of this defendant, that are similar in terms of common design, scheme, plan, course of conduct, motive, location of time and place, and other factors which are connected to the offense for which the defendant is on trial may be admissible and considered for the limited purpose of showing, if it does so show, the state of mind, that is, the knowledge or intent of the defendant in the crime or crimes charged in the case now on trial. Such evidence, if any, may not be considered by you for any other purpose.
The trial court's limiting instructions with respect to the other two similar transactions were virtually identical to this instruction. These instructions clearly limited the purposes for which the evidence was to be considered and did not "result in a `laundry list' of permissible purposes for the consideration" of similar transaction evidence prohibited in Stephan, supra. Todd v. State, 230 Ga.App. 849, 852(2)(c), 498 S.E.2d 142 (1998), overruled on other grounds, Johnson v. State, 272 Ga. 468, 469(1)(a), n. 2, 532 S.E.2d 377 (2000).
(b) Washington argues that evidence of the three previous transactions was erroneously admitted. The first involved an arrest that occurred five days before he was arrested for the offenses charged in this case. On the earlier date, the night of November 21, 1997, within a few blocks of the location of the incident involved here, Officer Clarence Few of the Savannah Police Department saw Washington and another man standing in the doorway of an abandoned, run-down building. The two men were standing close together, with the other man pointing into Washington's open palm. Thinking this to be a drug transaction, Officer Few approached the men, who did not notice him until his vehicle was approximately a car length away. Washington then saw Few and said, "`Oh, s,'" and threw a small baggie onto the ground. Inside the baggie were three rocks of crack cocaine.
Washington argues that this transaction did not satisfy Williams v. State, 261 Ga. 640, 642(2)(b), 409 S.E.2d 649 (1991). The State showed that Washington was the perpetrator of the earlier crime, and as discussed above, the trial court instructed the jury that the offense was admissible for the limited purpose of showing intent. Finally, the crimes were "strikingly similar," Roundtree v. State, 222 Ga.App. 363(2), 474 S.E.2d 224 (1996), as the earlier crime was committed at night within days and in the same vicinity of the incident for which Washington was on trial. We also note that during his trial testimony, Washington accused both Few, the eyewitness in the previous case, and Smith, a witness in this case, of lying. The affirmative showings required by Williams, supra, were clearly met, and the trial court did not err in admitting this evidence.
The second transaction occurred on December 28, 1994, approximately three years before the events of this case. Washington was stopped for a traffic violation and arrested because he did not have a driver's license. During a search incident to the arrest, a small plastic bag containing suspected marijuana was found inside the vehicle. Inside this bag were smaller, "dime-size bags of a leafy substance." Washington pled guilty to possession with intent to distribute *85 but testified at trial in this case that the contraband belonged to the passenger in the car with him. We find no error with regard to the admission of this evidence. There is no requirement that similar transactions be identical. See, e.g., Milton v. State, 232 Ga.App. 672, 674(2)(a), 503 S.E.2d 566 (1998). The fact that the independent offense occurred three years before the crime in this case is not determinative of admissibility, especially given the fact that Washington was incarcerated for a portion of that time period. See Goodroe v. State, 238 Ga.App. 66, 68(2)(a), 518 S.E.2d 139 (1999). Here, the previous crime was admissible for the limited purpose of showing Washington's intent to sell illegal drugs, and again, the trial court properly instructed the jury concerning the limited purpose for which the evidence was to be considered. See Willis v. State, 199 Ga.App. 658, 659(1), 405 S.E.2d 739 (1991).
The third similar transaction occurred in July 1993, in the late afternoon, when a police officer watched Washington and another man converse on the street and then walk to a nearby porch, where they sat down together. Washington reached into his pocket and removed a large plastic bag containing a green, leafy substance. The officer saw Washington take a portion of the substance out of the bag and give it to the other man. Washington was arrested and charged with possession of marijuana with intent to distribute. A pager and $44 were found on his person. He was convicted of possession of a controlled substance. He testified during the trial of this case that he was not selling marijuana but was simply giving marijuana to a friend. Washington argues that the controlled substances involved in the earlier case and in this case were "totally different" and that the times of day during which the incidents occurred "vary significantly."
Some question does exist as to the admissibility of the 1993 incident, as it is not abundantly clear that the contraband in that case was intended for distribution. The State presented no evidence of drug paraphernalia or large amounts of cash, nor did the State show that the packaging of the contraband was consistent with the intent to distribute. See generally Parris v. State, 226 Ga.App. 854, 856, 487 S.E.2d 690 (1997). But even assuming, without deciding, that this transaction was improperly admitted, we conclude that any error was harmless. We "must assess harm as well as error when similar transaction evidence has been improperly admitted. [Cits.] The error is harmless when it is highly probable the error did not contribute to the judgment. [Cits.]" Dumas v. State, 239 Ga.App. 210, 216(3), 521 S.E.2d 108 (1999). Given the direct testimony of Gavin and Smith, as well as the properly admitted remaining similar transactions, we conclude that a high probability exists that admission of the 1993 transaction did not contribute to the jury's verdict.
4. Washington contends he was denied effective assistance of counsel. To prevail on this claim, he must show that trial counsel's performance was deficient and that, but for this deficiency, a reasonable probability exists that the outcome of his trial would have been different. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Washington has not met this burden.
(a) We find no merit in Washington's contention that trial counsel rendered ineffective assistance by not moving for a directed verdict of acquittal. Such a motion would have been fruitless, given the facts of this case. As discussed above, ample evidence supported the verdict against Washington. During the hearing on Washington's motion for new trial, Washington's trial counsel acknowledged as much by testifying that moving for a directed verdict was "a futile move," that the evidence against Washington was "extremely strong," and that he did not feel he needed to make "a perfunctory motion that would have no basis whatsoever."
(b) Washington also argues that trial counsel was ineffective in failing to object to the State's introduction of a certified copy of his forgery conviction, which was not a similar transaction. But evidence concerning this previous conviction was first introduced by Washington himself on direct examination during his explanation of the incident involved here. He testified that Gavin tapped on his window and asked what he was "on *86 parole for," and he answered, "[f]orgery." On cross-examination, the prosecutor followed up on this testimony, asking Washington about his comment that he was on parole for forgery. Washington answered that he was on parole for "forgery, as well as possession and intent to distribute." He injected the issue of his previous conviction into evidence, and the State was authorized to further explore this area. Jordan v. State, 267 Ga. 442, 447(4), 480 S.E.2d 18 (1997).
(c) Washington maintains that he received ineffective assistance because his trial counsel failed to ascertain the "true identity" of one of its key witnesses, Smith. But trial counsel testified that he investigated Washington's claims concerning Smith's identity and "everything that [he] checked turned out empty." The trial court was authorized to believe this testimony, as witness credibility was a matter within its discretion. Randolph v. State, 225 Ga.App. 324, 484 S.E.2d 1 (1997). And Smith's credibility was attacked by trial counsel on the issue of her false statement concerning her "brother." She admitted that she had been lying and "was trying to get out of what I was actually doing." She also admitted on cross-examination that she had been accused of lying to the police on another occasion and had been charged with obstruction for giving false information. In addition, she acknowledged on cross that she sometimes went by the name of "Red," although she stated that she had never used an alias. Trial counsel clearly and fully attacked Smith's credibility, and to the extent that Washington argues that other evidence shows Smith to have operated under a false identity, we will not consider unsupported factual assertions made in appellate briefs, and briefs cannot be used in lieu of the transcript to add evidence to the record. Harris v. State, 230 Ga.App. 403, 405(2), 496 S.E.2d 277 (1998). This contention has no merit.
(d) Finally, Washington argues that trial counsel was ineffective for failure to request an "equal access" charge. But as discussed above, the evidence did not raise this doctrine as a defense, and trial counsel observed this fact during the hearing on the motion for new trial. Trial counsel therefore could not have been ineffective for failure to request a charge on equal access.
Judgment affirmed.
BARNES and PHIPPS, JJ., concur.