## A02A2061. HARRIS v. THE STATE.
### (572 SE2d 370)

BLACKBURN, Chief Judge.

Dwayne Lamar Harris appeals his convictions by a jury of three counts of aggravated assault, three counts of terroristic threats, and one count of family violence battery. On appeal, he argues that (1) the evidence was insufficient to support the convictions, and (2) he received ineffective assistance of counsel. For the reasons set forth below, we affirm.

1. Harris argues that the evidence was insufficient to support his convictions.

> On appeal from a criminal conviction, the evidence must be construed in a light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence. An appellate court determines only the legal sufficiency of the evidence adduced below and does not weigh the evidence or assess the credibility of the witnesses. As long as there is some evidence, even though contradicted, to support each necessary element of the State's case, the verdict will be upheld.

*Moore v. State.*[1]

---

[1] *Moore v. State*, 254 Ga. App. 134 (561 SE2d 454) (2002).

Viewed in this light, the evidence shows that since October 2000, Harris had been living with Schenita Thornton and her two sons, Q. S., age thirteen, and M. M., age ten, the victims in this case. On November 25, 2000, Thornton took Harris to his cousin's house and then went Christmas shopping with her mother. Later in the day, Thornton and her sons picked up Harris on the way home. As they drove to Thornton's house, Harris, who had been drinking, began to argue with Thornton. Not ready to return home, Harris asked that Thornton allow him to use her car, but Thornton refused.

Once home, Harris continued to press Thornton for the use of her car, but Thornton refused. Harris started packing his belongings and demanded that Thornton unlock the trunk of her car. When Thornton did not comply, Harris squeezed her head and rammed it into the window. Thornton screamed in pain and fell to the floor.

Hearing a loud noise, Q. S. and M. M. ran into Thornton's bedroom. Thornton told Harris that she was going to call the police. Harris grabbed the phone from Thornton and said, "Bitch, if I go to jail, I'm going to kill you." Harris then pulled a gun from his belongings and told Thornton, "I'm going to kill you; you're going to pay. All y'all are going to pay." When Thornton replied that, "My kids don't have nothing to do with this," Harris, running downstairs, yelled, "You make me hurt; y'all are going to pay; y'all are going to hurt."

Thornton, still intending to leave, came downstairs with her sons, where they found Harris kneeling in the living room holding the gun to his head. Harris jumped up, pointed the gun at Thornton and the boys, and yelled that he was going to kill them all.

Harris continued to yell that he was going to kill them all. Thornton and her children stood in the doorway as Harris telephoned his cousin, Frank Askew, and begged him to come get him before he killed Thornton.

Thornton and her children went back upstairs with Harris, who continued to say that he was going to kill them. Shortly thereafter, Askew and a man named Pooh arrived. Askew talked with Harris and Thornton, telling them they needed to work things out. Harris gave Askew his gun. Askew and Pooh left without taking Harris with them.

Harris was unable to get anyone to pick him up. Thornton lay down on her bed and turned her back to Harris; Harris then watched television until Sunday morning.

Harris, Thornton, and the children stayed in the house all day. Thornton testified that she was too afraid to escape or call the police.

On Monday, Thornton sent her sons off to school, warning them not to say anything to anybody because she was afraid of Harris. Thornton, who did not have to work Monday, remained in the house all day with Harris.

On Tuesday and Wednesday, Harris told Thornton to call in sick at her place of employment. On Thursday, he allowed her to return to work, driving her to work in her car and telling her that if she said anything, she would not see her children. Thornton wore sunglasses to work on Thursday and did not speak to anyone about her situation; however, on Friday, she told her supervisor what had happened, but asked her not to say anything to anybody.

On Friday night, after he picked her up at work, Harris told Thornton that he wanted to go out and asked to use her car. An argument ensued when Thornton refused.

On Saturday morning, Harris again asked Thornton to allow him to use her car, but again she refused. Harris then asked Thornton to give him a ride to Askew's house, and Thornton agreed, glad of the opportunity to get rid of him. When Thornton dropped Harris off at Askew's house, he demanded that she give him her house keys. Thornton, frightened by his threats, complied.

On Sunday, December 3, 2000, Harris called Thornton and told her to bring him his clothes. Anxious to retrieve her house keys, Thornton loaded Harris's clothes into her car and then picked up her cousin, Angela Russell. When she told Russell that Harris "had jumped on her," Russell agreed to accompany her to the home of Harris's grandparents. Thornton showed Harris's grandparents the injuries Harris had given her. As Thornton left the grandparents' house, she received another call on her cell phone from Harris. The message was the same: "Bitch, I'm going to kill you." Thornton drove home and, at Russell's urging, finally called the police and reported what had occurred.

Viewed in a light most favorable to support the verdict of the jury, the evidence was sufficient for a rational trier of fact to have found Harris guilty beyond a reasonable doubt of the offenses charged. *Jackson v. Virginia.*[2]

2. Harris next contends, on numerous grounds, that his trial counsel was ineffective in providing assistance of counsel, and that the trial court erred in denying his motion for new trial on this ground.

> The proper standard to be employed in determining enumerations concerning ineffective assistance of counsel, whether based upon a claim of right arising under federal or state law, is the two-pronged test announced in *Strickland v. Washington.*[3] First, appellant must show that counsel's performance was deficient; second, he is required to show that

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[3] *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

he was prejudiced by counsel's deficient performance. There is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance, and that any challenged action by trial counsel might be considered sound trial strategy. As to the second prong, the question is whether there exists a reasonable probability that, but for his counsel's errors, the jury would have had a reasonable doubt regarding appellant's guilt, that is, but for counsel's unprofessional errors, the result of the proceeding would have been different.

(Punctuation omitted.) *Gomillion v. State*.[4]

Here, the trial court determined, after a hearing on the motion for new trial, that Harris had not been denied effective assistance of counsel. "We must affirm a trial court's finding that a defendant has not been denied effective assistance of counsel unless it is clearly erroneous." (Punctuation omitted.) *Bogan v. State*.[5]

(a) Harris maintains that his trial counsel's performance in preparing for trial was deficient because: he failed to interview Harris more than once prior to trial, other than at the preliminary hearing; he failed to prepare Harris to testify at trial; and he failed to inform Harris that the incident date alleged in the indictment differed from the date alleged at the preliminary hearing and in the police reports.

Contrary to Harris's contentions, trial counsel testified that Harris, prior to turning himself in, approached him and asked him to represent him in this case; trial counsel agreed to do so and talked with Harris before he surrendered to police. Trial counsel also spoke with Harris about the case before the preliminary hearing and at his probation revocation hearing. Further, Harris often came by trial counsel's office or telephoned him to discuss his case.

Trial counsel testified that he spoke with Harris on numerous occasions, both before and during trial, about his right to take the stand and about the advantages and pitfalls of testifying at trial. He also prepared Harris to testify in the event that he chose to do so, reviewing with him what the likely issues at trial would be. In fact, Harris stated at trial that trial counsel had discussed with him his right not to testify, that he understood this right, and that he voluntarily had chosen to testify.

Finally, trial counsel testified that when he learned of a discrepancy in the incident date, he immediately informed Harris. Both Harris and trial counsel were informed at arraignment that the alleged date of the incident was November 25, 2000, rather than

---

[4] *Gomillion v. State*, 236 Ga. App. 14, 16 (3) (512 SE2d 640) (1999).

[5] *Bogan v. State*, 249 Ga. App. 242, 244 (2) (547 SE2d 326) (2001).

December 3, 2000, as alleged at the preliminary hearing. Harris and trial counsel received at this time a copy of the indictment, which alleged that the crimes had taken place on November 25, 2000; Harris and trial counsel reviewed the indictment together, and Harris signed the indictment.

Harris and his trial counsel "gave very different accounts of the pre-trial investigation and preparation process. Determining the credibility of these witnesses was a matter for the trial court's discretion." *Randolph v. State.*[6] The trial court was authorized to believe trial counsel's testimony concerning his meetings with, and preparation of, Harris rather than Harris's conflicting testimony on these matters. *Washington v. State.*[7] Thus, the trial court's determination that trial counsel's performance was not deficient on these grounds was not clearly erroneous. Id.

(b) Harris contends that trial counsel's performance in preparing for trial was deficient because he failed to interview the State's witnesses, Thornton and her children, before trial. We find no error.

At the hearing on the motion for new trial, trial counsel acknowledged that he did not speak with the State's witnesses. However, he explained that he had immediately opted into discovery at arraignment and that he had reviewed everything in the State's file at least twice. He said that, together with Harris, he had gone over the file, including Thornton's written statement, the written statements provided by both children, and the report of Officer Debra Smith, who had responded to Thornton's call to the police and was the only State witness at the preliminary hearing.

Trial counsel also testified that after reviewing the State's file and the tape of the preliminary hearing, he formed a trial strategy based on the contention that Thornton was angry because she had been jilted, and that she had, with the help of her children, fabricated her account of Harris's violent behavior. Trial counsel intended to use the testimony of Officer Smith to show that Thornton had lied to police, and, since Thornton was "stuck" with the conflicting statement that the crimes had been committed on December 3, trial counsel decided not to interview Thornton so as not to tip her off as to his trial strategy and the conflicts in her testimony.

Trial counsel's decision not to interview Thornton and her children was based on trial strategy. "[T]he fact that [Harris] and his appellate counsel disagree with the decisions, tactics, or strategies made by trial counsel does not demonstrate that [Harris's] trial counsel rendered ineffective assistance." *Mency v. State.*[8] Further, "[t]he

---

[6] *Randolph v. State,* 225 Ga. App. 324 (484 SE2d 1) (1997).

[7] *Washington v. State,* 253 Ga. App. 611, 618 (560 SE2d 80) (2002).

[8] *Mency v. State,* 228 Ga. App. 640, 647 (2) (f) (492 SE2d 692) (1997).

appellate courts of this state are reluctant to reverse a case on the ground of ineffective assistance of counsel whenever the specific complaint urged can reasonably be construed as involving defense counsel's trial strategy." (Punctuation omitted.) *Moody v. State*.[9] Thus, we agree with the trial court that trial counsel's decision not to interview Thornton and her children "does not establish deficient performance as counsel for inadequate trial preparation." *Bogan*, supra at 244 (2) (a).

(c) Harris claims that trial counsel's performance was deficient because he failed to properly interview defense witnesses and prepare them to testify at trial. We find no error.

At the hearing on the motion for new trial, trial counsel testified that Harris was having difficulty in his relationships with individuals who might testify on his behalf and that when he asked Harris for a list of witnesses, Harris's response was that "he really couldn't trust anybody at that point" and that "there wasn't anybody on his side anymore." Moreover, trial counsel testified that, though he identified for the State the witnesses he planned to call, he did not subpoena witnesses or supply a formal written list of witnesses because, based on his experience, he doubted that the testimony of any of the witnesses, other than Harris's grandmother, would be helpful to Harris.

As to specific witnesses, trial counsel testified that Harris told him that he could not count on Askew and instructed him not to call Askew as a witness; Harris said that Askew had told him that he would not come to court because he was afraid of being arrested on outstanding warrants. It was only during trial that Harris told trial counsel that Askew would testify, and Askew was in court to testify on the morning of the last day of trial. However, trial counsel did not call Askew as a witness because: Askew was intoxicated; he had gotten, from both Harris and Askew, several different versions of what Askew's testimony was to be; and Askew had told him when he arrived in court that he did not know what he was supposed to say on the stand. Askew was arrested that morning as he left the courtroom.

Trial counsel testified that Harris told him not to call Serita Hamilton as a witness because she had told him that she would not testify for him. Trial counsel also testified that he knew that Hamilton was angry with Harris, and that, in his experience, an angry witness could be a dangerous witness. By the time of trial, Hamilton evidently had changed her mind about testifying, and trial counsel did, in fact, call Hamilton as a witness.

Counsel did not call Pooh to testify because neither he nor Harris

---

[9] *Moody v. State*, 206 Ga. App. 387, 389 (1) (d) (425 SE2d 397) (1992).

were able to find Pooh. Finally, trial counsel testified that he did not call Roy Houston, Harris's grandfather, as a witness because Houston had a prior murder conviction, and because Houston had been arrested for aggravated assault between the time of Harris's arrest and his trial.

"Deciding which defense witnesses will be called is a matter of trial strategy and tactics, and tactical errors do not constitute ineffective assistance of counsel." (Punctuation omitted.) *Williams v. State*.[10] In his testimony, trial counsel offered explanations for his decisions not to call defense witnesses, and, in light of these explanations, "we conclude that counsel's judgment and tactics were reasonable under the circumstances." *Lee v. State*.[11] The trial court's finding that Harris was afforded effective assistance of counsel was not clearly erroneous. Id.

We take this opportunity to state that our review of the entire record convinces us that with respect to these witnesses, as well as many other aspects of the defense, trial counsel acted in good faith and in accordance with Harris's wishes.

> [W]henever defendant selects his own counsel, that counsel truly represents defendant and no mistake or error of his, made in good faith and with earnest and honest purpose to serve his client, can be made the basis of claim of reversible error. This is not to say that whenever a lawyer's ineffectiveness renders a trial fundamentally unfair, whether the lawyer was retained or appointed a deprivation of due process will not result. Commission by retained counsel of acts which may retrospectively appear to be errors of judgment, if made in good faith, do not constitute a denial of effective representation. A defendant cannot retain his selected counsel, seemingly acquiesce in his counsel's tactics, and if the trial results are unfavorable, have judgment set aside on alleged incompetence of counsel.

(Citations and punctuation omitted.) *Harrell v. State*.[12]

(d) Harris next contends that trial counsel's performance was deficient because he failed to secure Harris's employment records prior to trial so that Harris could have documentary evidence to support his testimony, and so that witnesses who signed or initialed the work records could rebut testimony of the State's witness. There is no merit to this contention.

---

[10] *Williams v. State*, 253 Ga. App. 453, 455 (1) (a) (559 SE2d 512) (2002).
[11] *Lee v. State*, 205 Ga. App. 139, 141 (421 SE2d 301) (1992).
[12] *Harrell v. State*, 139 Ga. App. 556, 559 (3) (228 SE2d 723) (1976).

First, as to Harris's claimed lack of documentary evidence, a review of the trial transcript shows that trial counsel did, in fact, call Gordon Bracey, the controller for Harris's employer. The defense entered into evidence printouts of the employer's time records and additional records kept by Harris's supervisor, and Bracey testified that the time records showed that Harris was at work on two of the days Thornton claimed he was keeping her confined in her house. In other words, Harris's claim that he lacked documentary evidence to support his claims is a clear misrepresentation of fact.

Harris also claims that he was deprived of the opportunity to secure witnesses who signed or initialed the work records and who could rebut the State's witness. The record shows that on cross-examination by the State, Bracey acknowledged that, because an employee's presence at work is recorded by an electronic device that reads the employee's card when it is swiped through the device, an employee's presence could be established by another employee to whom he had given his card. The State then called Thornton as a rebuttal witness. She testified that a co-worker had once asked Harris to swipe his card through the device because he had not wanted to come to work.

We fail to see how trial counsel's failure to have at trial a witness who signed or initialed Harris's work record deprived Harris of the ability to rebut Thornton's testimony. Harris has not shown how the testimony of the supervisor who signed his work record could possibly rebut Thornton's testimony that Harris had once met with a co-worker and agreed to run his card through the reading device when he got to work. Accordingly, "even assuming arguendo that trial counsel rendered deficient performance, [Harris] has failed to show that counsel's allegedly deficient performance resulted in actual harm." *Fults v. State.*[13]

We also note that in spite of the testimony of the controller and the written record establishing Harris's presence at work, the jury was free to choose to believe Thornton's version of the facts rather than Harris's. "As the jury is the sole judge of witness credibility, such choice is theirs to make, and it will not be disturbed on appeal." *Wright v. State.*[14]

(e) Harris argues that his trial counsel was ineffective because he failed to conduct individual voir dire of the first panel of prospective jurors. We disagree.

Our review of the transcript shows that the State attorney and defense counsel conducted voir dire of four panels of prospective

---

[13] *Fults v. State*, 274 Ga. 82, 86 (5) (548 SE2d 315) (2001).
[14] *Wright v. State*, 240 Ga. App. 763, 765 (2) (525 SE2d 143) (1999).

jurors. General voir dire of all panels was conducted by the trial court and both parties, and both the State attorney and defense counsel conducted individual voir dire of two of the four panels. The State attorney moved to strike five jurors and five jurors were struck; defense counsel moved to strike four jurors, of which number, three were struck.

At the hearing on the motion for new trial, defense counsel stated that he did not conduct individual voir dire of two of the panels because he had gotten all the information he needed from a general voir dire of the panels. He also stated that voir dire of the first panel had taken more time than expected and that there was no need to drag out the process through individual voir dire, especially since he had the information he needed.

We find defense counsel's conduct of voir dire professionally reasonable. Further, even assuming arguendo that trial counsel rendered deficient performance, Harris has failed to show that counsel's decision not to conduct individual voir dire of the panels resulted in actual harm. *Fults*, supra at 86.

(f) Harris complains that trial counsel's performance was deficient because he failed to request and file any jury charges, including charges on lesser included offenses. As set forth above, trial counsel's defense strategy was to show that Thornton was a liar and had fabricated the charges against Harris. A request for a charge on a lesser included offense would not be consistent with this defense. Accordingly, "[t]rial counsel's failure to request charges on . . . lesser included offenses . . . did not constitute deficient performance as counsel. To pursue an all-or-nothing defense is a matter of trial strategy." (Punctuation omitted.) *Bogan*, supra at 245 (2) (c).

(g) Harris complains that trial counsel rendered ineffective assistance of counsel because he failed to reserve objections to the jury charge. "Failure to object to a court's charge, however, is not ineffective assistance where the appellant does not show how this prejudiced his case." *Jones v. State*.[15]

3. We have reviewed Harris's remaining enumerations of error and find that they either lack citation of authority and argument and are, therefore, abandoned pursuant to Court of Appeals Rule 27 (c) (2) or are devoid of merit. *Wingate Land & Dev. v. Robert C. Walker, Inc.*[16]

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

---

[15] *Jones v. State*, 263 Ga. 835, 838 (2) (439 SE2d 645) (1994).
[16] *Wingate Land & Dev. v. Robert C. Walker, Inc.*, 252 Ga. App. 818, 823 (558 SE2d 13) (2001).

DECIDED OCTOBER 9, 2002.

*Suellen Fleming*, for appellant.

*Robert E. Keller, District Attorney, Kathryn O. Pulliam, Assistant District Attorney*, for appellee.