A94A2562. MEEKS v. THE STATE.
(455 SE2d 350)

RUFFIN, Judge.

Daniel Meeks was indicted for two counts of first degree vehicular homicide. He was convicted by a jury and appeals the denial of his motion for new trial.

At trial, Officer James West, a member of the Gwinnett County DUI Task Force, testified that shortly after midnight, he arrested a drunk driver traveling north on Interstate 85 ("I-85") just south of Jimmy Carter Boulevard. Officer Chris Magill arrived at the scene and offered to stay with the arrested driver's car until the tow truck arrived while West took the driver to jail. Magill's police car was parked in the emergency lane and the blue lights were illuminated. Around this time, Alan Hutcherson, an off-duty police officer, was traveling north on I-85 from the Pleasantdale Road area. Hutcherson testified that he noticed a driver in front of him, later identified as Meeks, changing lanes several times using his right signal before moving to the left and signaling a right turn when moving to the left. The car swerved to the left and right several times and other cars were swerving to get out of its way. Believing the driver of the car was dangerously intoxicated, Hutcherson decided to catch the driver, get

his attention, and have him pull over to the side of the road. Hutcherson increased his speed to approximately 70-75 mph as he attempted to catch Meeks. He estimated he was able to get within 10-20 feet of Meeks, with two lanes of traffic separating them, but that Meeks looked straight ahead and never turned to look at him. At that time, Hutcherson was able to see the blue lights from Magill's car ahead of him. Hutcherson blew his horn and Meeks moved into the emergency lane. Meeks traveled in that lane for approximately a quarter of a mile before crashing into Officer Magill's car and killing him. Hutcherson testified that Meeks was traveling approximately 75-80 mph at the time of the wreck, and that he never saw Meeks slow down or apply the brakes before the wreck.

Dr. Brown, a witness from the Georgia State Crime Lab, testified that Meeks had a .22 percent blood-alcohol content, and the jury was charged that it is illegal for an individual to drive when his blood-alcohol content is .10 percent or more. Meeks admitted drinking eight or nine beers that evening, which included two cans he drank while driving. Meeks testified that he traveled from Interstate 285 to I-85 north; that the Pleasantdale Road exit was the last sign he remembered seeing; and that he never saw the blue lights from Magill's car. Meeks remembered bright lights and a horn blowing, and the next thing he knew, a woman was telling him "[y]ou S.O.B., you killed him. You S.O.B., you killed him."

1. Meeks contends the trial court erred in failing to give his requested charge on sudden emergency, arguing that being "chased" by a driver honking his horn might lead anyone to believe an emergency existed. This enumeration is without merit. The charge of sudden emergency is "not appropriate in a criminal case. . . . [Cits.]" *Stancil v. State*, 158 Ga. App. 147, 149 (3) (279 SE2d 457) (1981).

2. Meeks contends that a jury could conclude that Hutcherson's reckless pursuit of him was the proximate cause of Magill's death and that the trial court therefore erred in failing to give his requested charge on intervening criminal causation. We disagree. The charge was not adjusted to the evidence as it must be. *Kimble v. State*, 209 Ga. App. 36 (2) (432 SE2d 636) (1993). Hutcherson testified that even when off duty, a police officer should not ignore an intoxicated driver and that officers in a personal vehicle may stop a driver in a life threatening situation. Moreover, Meeks presented no evidence that Hutcherson's conduct violated any criminal statute. Finally, given Meeks's highly intoxicated state and the fact that he remembers nothing after seeing the Pleasantdale Road sign, including the blue lights from Magill's car, we cannot conclude that without the pursuit by Hutcherson, Magill would not have been struck by Meeks. This enumeration is without merit.

3. Meeks contends the trial court erred in failing to charge the

jury that "[i]n order for the defendant to be guilty of vehicular homicide in the first degree, . . . you must find that the victim's death was proximately caused by either the defendant driving under the influence or by the defendant engaging in reckless driving." He argues that without this charge, the jury was confused and did not understand that in order to find him guilty of first degree vehicular homicide, they were required to find that Magill's death was proximately caused by Meeks driving under the influence. Meeks contends that this confusion is evidenced by the jury's request for a written definition of first and second degree vehicular homicide. We disagree.

The court charged the jury on first degree vehicular homicide, including the language that "[a] person commits . . . homicide by a vehicle in the first degree when, . . . that person *causes* the death of another person by driving any vehicle in such a manner as to be in reckless disregard for the safety of persons . . . or . . . by driving . . . any moving vehicle while under the influence of alcohol. . . ." (Emphasis supplied.) The court immediately followed this charge with a proximate cause charge. The court's charges covered the same legal principle as the one requested by Meeks. "It is well settled that the trial court is not obligated to instruct the jury in the exact language requested and that, where the same principle of law is covered in another instruction, failure to give the requested charge is not error." (Citation and punctuation omitted.) *Pierce v. State*, 209 Ga. App. 366, 368 (3) (433 SE2d 641) (1993). The court's charge as a whole was sufficient and there was no error in the refusal to give the requested charge. *Mote v. State*, 212 Ga. App. 551 (2) (442 SE2d 799) (1994).

4. Meeks contends that the trial court erred in prohibiting him from questioning prospective jurors during voir dire about whether they were familiar with (1) rapes and robberies in Cobb County which occurred when motorists were pulled over by a man pretending to be a police officer and (2) a woman in DeKalb County who was raped and robbed after being stopped by a man pretending to be a police officer. He argues that this information was crucial to his defense because those were the circumstances he found himself in and jurors familiar with those events would be more likely to view Hutcherson's pursuit of him as unreasonable and believe that his failure to stop was reasonable. We disagree. "The single purpose for voir dire is the ascertainment of the impartiality of jurors, their ability to treat the cause on the merits with objectivity and freedom from bias and prior inclination." (Citation and punctuation omitted.) *Frazier v. State*, 138 Ga. App. 640, 643 (2) (c) (227 SE2d 284) (1976). Meeks's proposed questions, however, sought not to ferret out bias or impartiality, but to find jurors amenable to the defense his lawyer would attempt to argue. "Questions seeking to test the prospective jurors' willingness to accept defenses have been disallowed and upheld on

appeal." *Henderson v. State*, 251 Ga. 398, 400 (1) (306 SE2d 645) (1983). Moreover, Meeks never testified that he was aware of Hutcherson's pursuit, let alone that he failed to stop or slow down because of some apprehension that Hutcherson might not be a police officer. Thus, the questions were irrelevant and the court did not abuse its discretion in refusing to allow them. *Henderson*, supra at 401.

5. Meeks contends the trial court erred in denying his motion for a change of venue due to pre-trial publicity about the case. He argues that newspaper articles mentioning his previous criminal record, two of which were published immediately prior to trial, made it impossible for him to get a fair trial. The trial court reserved ruling until after voir dire was complete.

The trial court has the discretion to grant a change of venue and its determination will not be disturbed absent an abuse of that discretion. *Chancey v. State*, 256 Ga. 415 (5) (349 SE2d 717) (1986). "In a motion for a change of venue, the petitioner must show (1) that the setting of the trial was inherently prejudicial or (2) that the jury selection process showed actual prejudice to a degree that rendered a fair trial impossible. [Cit.]" *Grace v. State*, 210 Ga. App. 718, 720 (3) (437 SE2d 485) (1993). Meeks has not shown that the setting of the trial was inherently prejudicial. See, e.g., *Nobles v. State*, 201 Ga. App. 483 (11) (411 SE2d 294) (1991).

Nor has Meeks shown actual prejudice in the jury selection process rendering a fair trial impossible. This determination involves a review of the voir dire examination of potential jurors. *Chancey*, supra at 429 (5). Meeks's counsel was allowed individually sequestered voir dire and wide latitude in questioning the potential jurors. See *Nobles*, supra. During voir dire, 50 potential jurors were questioned and 38 were qualified for jury selection. Of the twelve jurors excused for cause, the record shows that seven were excused due to pre-trial publicity and two because of both pre-trial publicity and personal beliefs about alcohol consumption. Three were excused for reasons unrelated to pre-trial publicity. "As to the remaining prospective jurors, [Meeks] has not shown that any of them were unable to lay aside [any] impression [of guilt] and render a verdict based on evidence presented in court." *Morrill v. State*, 216 Ga. App. 468 (454 SE2d 796) (1995). Accordingly, the trial court did not abuse its discretion in denying Meeks's motion for a change of venue.

*Judgment affirmed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED MARCH 13, 1995 — 

*David L. Whitman*, for appellant.
*Daniel J. Porter, District Attorney, Phil Wiley, Donald L.*

*Johstono, Jr., Assistant District Attorneys,* for appellee.