## A02A0388. CALLAHAN v. THE STATE.
### (568 SE2d 780)

SMITH, Presiding Judge.

Roger Gene Callahan was indicted on two counts of aggravated child molestation by performing an act of anal sodomy on a nine-year-old boy. He was tried by a jury, which found him guilty of one count and acquitted him of the other. Callahan's motion for new trial, as amended, was denied, and he appeals, raising eight enumerations of error challenging the sufficiency of the evidence and the trial court's exclusion of certain evidence, failure to give certain jury

charges, and restriction of voir dire. We find no merit in Callahan's enumerations, and we affirm his conviction.

Construed to support the verdict, the evidence presented at trial showed that in September 1998, Callahan and his girlfriend moved in with the girlfriend's former sister-in-law and her future husband,[1] and their four children: the nine-year-old victim and three younger children. Callahan often agreed to watch the children while the other adults were at work. Approximately two months later, on a Saturday morning, Callahan was alone in the shared mobile home with the two older boys. Callahan came into the victim's room and told the victim to pull his pants down and bend over the bed. Callahan lubricated his penis and inserted it into the victim's anus. He then told the victim not to tell anyone and promised he would give him a dollar.

That day, after an argument with his girlfriend, Callahan and his girlfriend left the residence and went to stay at a motel. On Sunday, while the children were at the babysitter's home across the street from their home, the babysitter found the victim and her son on a bed fully clothed, acting out "doggy-style" sex. The babysitter informed the victim's stepmother, who instructed the victim to tell his father. When the victim did not tell his father, his stepmother did, and the victim spoke up, saying: "Well, Roger did this to me."

On Monday, his father and stepmother took the victim to the local pediatric emergency room, where he was examined by a staff nurse and a pediatrician. They found no lacerations or bruises, but they did find that the victim had a dilated anal sphincter. The pediatrician testified that these findings were consistent with the history and time frame given by the victim and that the dilatation was "most likely . . . caused [by] penetration of a male penis." The victim was also examined that day by a sexual assault nurse examiner, who also testified that her physical findings were consistent with the victim's recent outcry and his report of the time frame of the molestation.

Also on Monday, Callahan left the motel and went to his brother's home in Cumming. Early Tuesday morning, Callahan left his brother's home and went to stay with an old friend in Jasper. He told his brother he was planning to hide out in the mountains like Eric Rudolph. He was arrested there at about 5:00 in the morning, hiding behind a couch in a trailer.

The victim stated Callahan had used a white washcloth to clean up after the molestation. Police officers collected two white washcloths for testing from a pile of dirty laundry at the home, as well as a jar of Vaseline the victim identified as having been used by Callahan to lubricate himself. None of these items showed traces of seminal

---

[1] This couple later married and will be referred to as the victim's father and stepmother.

fluid or fecal material, and the jar did not reveal Callahan's fingerprints.

1. Callahan contends the evidence was insufficient to support his conviction. We do not agree.

Callahan argues that the evidence was circumstantial and did not exclude every other hypothesis except his guilt and that he provided a reasonable explanation for the victim's testimony, saying the victim had been in trouble for his behavior with his friend and fabricated the allegation against Callahan to get himself out of that trouble.

Callahan is mistaken. The victim's testimony provided direct evidence of his guilt. "Taking the victim's testimony as true, as we must, it alone was clearly sufficient to authorize" Callahan's conviction for aggravated child molestation. (Citations and punctuation omitted.) *Brown v. State*, 251 Ga. App. 459, 460 (1) (554 SE2d 537) (2001). Here, the testimony was also corroborated by the medical findings, which experts testified were completely consistent with the victim's allegation of abuse by anal penetration by an adult male within the past 48 hours. This evidence, together with Callahan's flight, was more than sufficient to authorize the jury to find Callahan guilty of aggravated child molestation under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In three enumerations, Callahan maintains that the trial court erred in excluding certain evidence, all of which he argues was relevant to show alternative explanations for both the medical findings and the victim's acting out sexually.

(a) After a proffer, the trial court excluded testimony from Callahan's sister-in-law, who had lived with the victim when he was four or five years old, that during that time period she had once witnessed the victim placing sticks up his own rectum. Citing *Lemacks v. State*, 207 Ga. App. 160 (427 SE2d 536) (1993), and *Hall v. State*, 196 Ga. App. 523 (396 SE2d 271) (1990), Callahan argues that this evidence was admissible because it showed that both the victim's sexual behavior with his friend and the medical findings could have been explained by the fact that the victim had previously engaged in this behavior. But the cases cited by Callahan are distinguished factually from this one.

The evidence was excluded on the basis of OCGA § 24-2-3 (b), which prohibits the introduction of evidence relating to the victim's past sexual behavior. But in *Lemacks* this court made the distinction that " 'behavior' is not synonymous with 'experience.' The intent of the statute is to exclude evidence which might reflect on the character of the witness without contributing materially to the issue of the guilt or innocence of the accused. [Cits.]" Id. at 161. Because the evidence in that case was of a prior forcible rape, which did not reflect on the victim's character, we held that it was admissible. Id.

In *Hall*, supra, the trial court permitted evidence to be presented concerning child sexual abuse accommodation syndrome but excluded evidence of prior molestations. We reasoned that excluding the evidence of the prior molestations left the jury with the untrue and unfair impression that nothing except molestation by the defendant would explain the symptoms exhibited by the victim, which were consistent with what had been described to the jury as evidence of sexual abuse. Id. at 524-526 (2).

Here, in contrast, the evidence was of prior sexual experience, not forcible molestation, and was precisely the type of evidence prohibited by the statute. The State did not present any evidence of child sexual abuse accommodation syndrome, so the jury was not left with an unfair impression. And most importantly, the medical findings were not consistent with an injury that may have occurred five or six years earlier. Testimony was presented that the dilatation of the anal sphincter was consistent with penetration within the last 48 hours. Testimony was also presented that the sphincter tone "would return over time unless it's chronic, repeated, repeated, repeated." This incident therefore was simply not relevant, and the trial court did not err in excluding it.

(b) Callahan also proffered testimony from his sister-in-law concerning prior sexual activity by the victim with other children, including one incident years earlier, before the incident with the sticks, when she had allegedly caught the victim engaging in oral sodomy with her son while both children were unclothed, and another incident when the victim had been found allegedly acting out sexually with his younger sister.

For the same reasons as those discussed in Division 2 (a), the trial court did not err in excluding this evidence. In addition, contrary to Callahan's argument, no evidence was presented that the victim was penetrated by his friend when the babysitter found them simulating sex. The medical evidence, in fact, was that the sphincter dilatation was consistent with penetration that had occurred 48 hours prior to the examination. The evidence of prior sex play with other children was not relevant, and it was properly excluded by the trial court under OCGA § 24-2-3 (b).

(c) The trial court also prohibited the sister-in-law from testifying that the victim was raised in a household where sexual activity was open and the victim observed sexual activity.

Callahan cites *Jimmerson v. State*, 190 Ga. App. 759 (380 SE2d 65) (1989), as support for his argument that this evidence should have been admitted because it was relevant to counter the State's suggestion that the victim's knowledge of the specific sexual activity was learned from Callahan. But although the State argued that the

victim was imitating the act performed on him by Callahan, the State never made the argument that the victim's knowledge could have come only from his contact with Callahan. And nothing in the excluded testimony showed that the victim could have learned of this particular sexual activity anywhere else. It therefore was not relevant. *Jimmerson* dealt with child sexual abuse accommodation syndrome, no evidence of which was introduced here. Moreover, this court has held repeatedly that in child molestation cases, the victim's reputation for nonchastity or preoccupation with sexual matters is not admissible unless it contributes materially to the issue of the defendant's guilt or innocence. See, e.g., *McGarity v. State*, 224 Ga. App. 302, 303-304 (1) (480 SE2d 319) (1997); *Martin v. State*, 196 Ga. App. 145, 147 (3) (395 SE2d 391) (1990). The trial court did not err in excluding this evidence.

3. Callahan complains that the trial court declined to give three of his requested charges.

(a) Callahan requested the pattern charge on impeachment by evidence of bad character. He argues that it was adjusted to the facts of this case because the victim's stepmother told the police during a taped interview that the victim makes up stories when he gets into trouble. The State originally objected to the admission of this evidence, but later withdrew its objection, and the jury heard this evidence.

The procedure for impeaching a witness by proof of bad character is set by statute.

> The impeaching witness should first be questioned as to his knowledge of the general character of the witness, next as to what that character is, and lastly he may be asked if from that character he would believe him on his oath. The witness may be sustained by similar proof of character. The particular transactions or the opinions of single individuals shall not be inquired of on either side, except upon cross-examination in seeking for the extent and foundation of the witness's knowledge.

OCGA § 24-9-84. The stepmother's testimony did not meet the requirements of the statute. She did not testify to the victim's general reputation for truthfulness in the community or whether she would believe him under oath. The victim's credibility therefore was not impeached, and the trial court did not err in declining to give this requested charge.

(b) Callahan requested a charge on false swearing. The charge tracked the language of OCGA § 24-9-85 (b), which provides: "If a witness shall willfully and knowingly swear falsely, his testimony

shall be disregarded entirely, unless corroborated by circumstances or other unimpeached evidence." The statute applies when "the witness admits that he wilfully and knowingly swore falsely, or where the testimony is such as to render the purpose to falsify manifest." (Citations and punctuation omitted.) *Steele v. State*, 248 Ga. App. 441, 442 (1) (546 SE2d 547) (2001). Callahan argues that the charge should have been given because, although the victim did not admit that he did "willfully and knowingly swear falsely," the second alternative applies: the testimony at trial was such that it rendered manifest the victim's purpose to falsify. We do not agree.

When, as here, the witness does not admit to swearing falsely, the question of whether the testimony manifests such an intent is one of credibility, for the jury to decide. *Steele*, supra. As this court stated in *Steele*, the

> testimony demanded a charge on the credibility of witnesses to be sure. As in the nature of mere conjecture or speculation, however, the possibility of a motive to testify falsely does not evidence a manifest purpose to do so. Neither does it establish that the victim['s] testimony was wilfully or knowingly false. Accordingly, the victim['s] credibility was for the jury to determine under a proper instruction from the court. As the trial court gave such an instruction, it did not err in denying the request to charge on OCGA § 24-9-85 (b).

(Citations omitted.) Id.

(c) Callahan requested a charge stating that his uncorroborated testimony was sufficient to authorize the jury to find him not guilty of the charges in the indictment if that testimony convinced the jury that the State had not proved his guilt beyond a reasonable doubt. In his request, Callahan cited *Mency v. State*, 228 Ga. App. 640 (492 SE2d 692) (1997), as authority for this proposition. Nowhere in *Mency*, however, does this statement appear. In *Mency*, we approved a charge that stated the converse, that in a child molestation or aggravated child molestation case, the uncorroborated testimony of the victim is sufficient to sustain a conviction. Id. at 649. In fact, although the substance of the charge may be sound, that substance was covered in the pattern charges on reasonable doubt, witness credibility, and the State's burden of proof, which were given here. We have found no cases authorizing a separate charge like that requested by Callahan. The trial court did not err in failing to give this requested charge.

4. Callahan contends the trial court abused its discretion in limiting the scope of voir dire by prohibiting him from asking certain

specific questions of prospective jurors. We have reviewed the transcript of the voir dire, and we are satisfied that the trial court did not err.

(a) The trial court refused to allow the question: "Do [you] believe children ever fabricate allegations of molestation or sexual abuse?" Callahan alleges that the question was permissible and designed to reveal the jurors' biases and inclinations, as permitted by OCGA §§ 15-12-133 and 15-12-164. We do not agree.

This court has held that questions that seek to test whether jurors are willing to accept specific defenses may be disallowed. *Meeks v. State*, 216 Ga. App. 630, 632-633 (4) (455 SE2d 350) (1995). Here, as in *Meeks*, Callahan's proposed question "sought not to ferret out bias or impartiality, but to find jurors amenable to the defense his lawyer would attempt to argue." Id. Moreover, Callahan was permitted to inquire of prospective jurors whether they had ever had experiences with children in which the children fabricated a story to get out of trouble.

(b) The trial court refused to allow defense counsel to ask prospective jurors if they so identified with a child victim that they could not be fair and impartial. This subject matter, if not this exact question, was allowed in the group questioning by defense counsel. The subject was also covered in the State's general questioning of jurors. Callahan therefore was not denied the right to explore this area of possible bias.

(c) Callahan sought to ask prospective jurors whether they would automatically believe the child if a child and an adult testified differently to certain facts. The trial court properly disallowed this question. Questions such as this are impermissible because they invade "the right and the responsibility of the jury to determine individual credibility in the context of the entire case," as do questions regarding the relative credibility of police officers and lay persons. *Bennett v. State*, 153 Ga. App. 21, 25-26 (264 SE2d 516) (1980). Accord *Henderson v. State*, 251 Ga. 398, 400 (306 SE2d 645) (1983).

(d) Callahan also desired to ask prospective jurors what it was about themselves that made them believe they could be fair and impartial jurors in this case, and what type of biases they had that would prevent them from being fair and impartial. Both questions were properly disallowed. "The scope of voir dire and the propriety of particular questions are left to the sound discretion of the trial court." (Citation and punctuation omitted.) *Caldwell v. State*, 249 Ga. App. 885, 889 (5) (549 SE2d 449) (2001). Both questions were general and nonspecific and were adequately covered in the trial court's preliminary questioning of prospective jurors. The trial court did not abuse its discretion in disallowing them.

*Judgment affirmed. Eldridge and Ellington, JJ., concur.*

DECIDED JULY 11, 2002 — 

*Lenzer & Lenzer, Robert W. Lenzer, Thomas P. Lenzer*, for appellant.

*Daniel J. Porter, District Attorney, James M. Miskell, Assistant District Attorney*, for appellee.