SEARS, Chief Justice.
In 2004, a Cobb County jury convicted Michael A. Washington of felony murder and other crimes in connection with the shooting death of Myung Ho Cho. Washington contends the evidence presented at trial was legally insufficient to support the verdict, his sentence exceeds the statutorily prescribed maximum and thus violates the constitutional ban on cruel and unusual punishments, and he received ineffective assistance of counsel at trial. Finding no merit in these arguments, we affirm.[1]
1. Viewed in the light most favorable to the verdict, the evidence presented at trial would have enabled a rational trier of fact to find as follows. Cho owned and operated a hot wings restaurant called “A1 Pastor” located in a small shopping center in Cobb County. On November 25, 2002, 16-year-old Andre Lawrence walked into the restaurant, smoked a cigarette, and shot Cho twice at close range. Cho was dead within minutes. Lawrence broke open the cash register and took all the bills. Lawrence also stole Cho’s wallet. Meanwhile, 20-year-old Washington stood guard outside the restaurant as the lookout.
Washington and Lawrence lived in the same nearby apartment complex and were friends. That morning, Lawrence came to Washington’s apartment armed with a stolen pistol. The two had previously talked about robbing Cho. Knowing Lawrence had the gun and intended to rob Cho, Washington left his apartment and walked with Lawrence to the victim’s business, where he stood watch at the door and deterred two potential customers from entering as the armed robbery was underway. After Lawrence shot Cho, he and Washington fled the scene together and went to a friend’s apartment, where Washington changed his shirt to disguise his identity. Washington gave the police shifting accounts of what had happened, and physical evidence presented at trial pointed to Washington’s involvement in the crimes. Two eyewitnesses said Washington appeared to be acting *542 as a lookout for Lawrence.
Washington and Lawrence were arrested and charged with malice murder and other offenses. Lawrence pled guilty to malice murder, and his guilty plea was introduced into evidence at Washington’s trial. Washington testified in his own defense that the armed robbery was all Lawrence’s idea, that he tried to talk Lawrence out of it and thought he had succeeded, and that he was unaware that Lawrence still planned to rob Cho when they walked to A1 Pastor the day of the crimes.
Contrary to Washington’s claim, the evidence was more than sufficient to support his convictions as a party to the crimes of felony murder, aggravated assault, and two counts of armed robbery. Proof of Washington’s direct commission of the crimes was not required because the jury could infer his participation from his conduct before, during, and after them.[2] Viewed in the light most favorable to the verdict, we have no difficulty concluding that the evidence was sufficient to authorize a rational trier of fact to find Washington guilty beyond a reasonable doubt of the crimes for which he was convicted.[3]
2. Washington claims his sentence of life plus twenty years in prison violates the constitutional prohibition against cruel and unusual punishments because the sentence exceeds the statutorily authorized maximum set by the General Assembly. This claim is meritless.
The felony murder statute, OCGA § 16-5-1, authorizes a sentence of life in prison on conviction for felony murder.[4] The armed robbery statute, OCGA § 16-8-41, authorizes a sentence of “death or imprisonment for life or by imprisonment for not less than ten nor more than 20 years.”[5] The trial court sentenced Washington to life in prison for the felony murder conviction plus two 20-year terms, running concurrent to each other but consecutive to the felony murder sentence, for the two convictions for armed robbery for the separate thefts from the cash register and Cho’s wallet. The statutory maximum was not exceeded, and there was thus no violation on this basis of Washington’s right to be free of cruel and unusual punishments.
3. Washington’s final enumeration of error is best understood as *543 an ineffective assistance of counsel claim.[6] Ineffective assistance of counsel claims are generally evaluated under the two-part deficient performance and resulting prejudice test announced in Strickland v. Washington,[7] In order to prevail on a claim of ineffective assistance of counsel, a defendant must show both that: (1) counsel’s performance was professionally deficient; and (2) but for counsel’s unprofessional errors, there is a reasonable probability that the outcome would have been more favorable.[8]
(a) Washington posits four alleged instances of professionally deficient performance by trial counsel: (i) failing to object when the State entered co-defendant Lawrence’s guilty plea into evidence; (ii) allowing BellSouth telephone records to be admitted; (iii) failing to secure the presence of Washington’s father to testify at trial; and (iv) not responding properly to two jurors sleeping or otherwise being inattentive at critical stages of the proceedings. We address each allegation in turn.
(i) Washington did not call his trial counsel to testify at the hearing on the motion for new trial, and in the absence of evidence to the contrary, counsel’s decisions are presumed to be strategic and thus insufficient to support an ineffective assistance of counsel claim.[9] A decision not to object to the admission of a co-defendant’s guilty plea under Bruton v. United States can, depending on the circumstances, be the result of reasonable trial strategy.[10] Washington has not made a contrary showing, and he thus failed to show deficient performance.
(ii) Trial counsel did object to admission of the BellSouth telephone records, but the trial court overruled the objection. The evidence showed that BellSouth maintained them in computer storage as business records, and the trial court therefore did not err in admitting them under the business records exception to the hearsay rule. Washington failed to demonstrate deficient performance.
*544 Decided June 15, 2009.
Thomas E. Stewart, for appellant.
(iii) Washington contends his trial counsel was ineffective in failing to secure the presence of his father to testify at his trial. However, Washington did not call his father as a witness at the motion for new trial hearing, and without a proffer, he cannot show that trial counsel performed deficiently in not calling his father as a witness at trial.
(iv) Washington’s final allegation of deficient performance involves trial counsel’s failure to respond appropriately to a juror or jurors who allegedly slept or were sleepy at critical points in the proceedings. However, Washington did not present any admissible evidence at the motion for new trial hearing to prove this allegation. The trial court made the following findings in its order denying Washington’s motion for new trial:
Here, neither counsel nor the Parties notified the Court of a sleeping juror. Furthermore, the only evidence Defendant presents to show that one or more jurors may have been sleeping during trial are two unsworn letters from investigators who interviewed some of the jurors after the trial had concluded. Unsworn statements from third persons offering hearsay statements of jurors that might tend to impeach the jury’s verdict are certainly not evidence enough to show that one or more jurors may have been sleeping during the trial of the case.
Washington did not prove with admissible evidence the existence of the problem he claims trial counsel failed to respond to appropriately.[11] Thus, he failed to show deficient performance.
(b) Even if trial counsel’s performance were deficient in any or all of the four instances cited by Washington, we would nevertheless affirm. The evidence of Washington’s guilt was overwhelming, and there is no reasonable probability the outcome would have been more favorable had counsel done the things Washington now claims counsel should have. Accordingly, Washington failed to establish the second prong of the Strickland test as well.

Judgment affirmed.

All the Justices concur.

Patrick H. Head, District Attorney, Bruce D. Hornbuckle, Dana J. Norman, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Reggie A. Lampkin, Assistant Attorney General, for appellee.

 Washington committed his crimes on November 25, 2002. The grand jury indicted him on January 9, 2004, and on May 26, 2004, the jury acquitted Washington of malice murder but convicted him of felony murder, aggravated assault, and two counts of armed robbery. The aggravated assault conviction merged into the conviction for felony murder, OCGA § 16-1-7; Harrison v. State, 283 Ga. 518, 519, n. 1 (661 SE2d 536) (2008), and the trial court sentenced Washington on June 8, 2004, to life in prison plus 20 years consecutive. Washington filed a motion for new trial on June 9, 2004, and amended motions for new trial on February 18, 2008, and March 14, 2008. Following an evidentiary hearing, the trial court entered an April 10, 2008 order denying the motion. Washington filed a timely notice of appeal on April 24, 2008, but erroneously designated the Court of Appeals as the court with appellate jurisdiction. The Court of Appeals transferred the case to this Court on August 26, 2008. The case was docketed on September 2, 2008, and was subsequently submitted for decision on the briefs.

 Curinton v. State, 283 Ga. 226, 228 (657 SE2d 824) (2008); Strozier v. State, 277 Ga. 78, 79-80 (586 SE2d 309) (2003).

 Jackson v. Virginia, 443 U. S. 307, 309 (99 SC 2781, 61 LE2d 560) (1979); In re Winship, 397 U. S. 358, 361-364 (90 SC 1068, 25 LE2d 368) (1970).

 OCGA § 16-5-1 (d).

 OCGA § 16-8-41 (b).

 The Sixth Amendment to the United States Constitution guarantees that “[i]n all criminal prosecutions, the accused shall enjoy the right... to have the Assistance of Counsel for his defence.” U. S. Const. Amend. VI. Likewise, the Georgia Constitution of 1983 provides that “[e]very person charged with an offense against the laws of this state shall have the privilege and benefit of counsel.” Ga. Const. Art. I, Sec. I, Par. XIV.

 Strickland v. Washington, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (2004). See Florida v. Nixon, 543 U. S. 175, 178, 190 (125 SC 551, 160 LE2d 565) (2004); Bell v. Cone, 535 U. S. 685, 695 (122 SC 1843, 152 LE2d 914) (2002).

 Strickland, supra, 466 U. S. at 687-696; Jones v. State, 279 Ga. 854, 855 (622 SE2d 1) (2005).

 Ballard v. State, 281 Ga. 232, 234, n. 6 (637 SE2d 401) (2006); Holmes v. State, 273 Ga. 644, 648 (543 SE2d 688) (2001).

 Bruton v. United States, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968). See Bunkley v. State, 278 Ga. App. 450, 453-454 (629 SE2d 112) (2006); Smith v. State, 269 Ga. App. 133, 142 (603 SE2d 445) (2004).

 See Corbin v. McCrary, 22 Ga. App. 472, 472 (96 SE 445) (1918) (“if a verdict may not be impeached by an affidavit of one or more of the jurors who found it, certainly it cannot be impeached by affidavits from third persons, establishing the utterance by a juror of remarks tending to impeach his verdict”).